IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 13-CV-80243-KMM

STEWART TITLE GUARANTY COMPANY,

     Plaintiff/Appellant,

vs.

DENISE ROBERTS-DUDE,

     Defendant/Appellee.

_____/

## ORDER

THIS CAUSE is before the Court on an appeal from the bankruptcy court's December 28, 2012 Order Granting Final Judgment for Defendant and Memorandum Opinion Underlying the Judgment. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001. For the reasons stated herein, the bankruptcy court's judgment is reversed.

## FACTUAL BACKGROUND

This appeal concerns whether Appellant justifiably relied upon misrepresentations made by Appellee concerning the existence of a substantial deed of trust on Appellee's property. Appellee Denise Roberts-Dude ("Roberts-Dude" or "Defendant") is a resident of West Palm Beach, Florida. Appellant Stewart Title Guaranty Company ("Stewart Title" or "Plaintiff") is a Texas corporation in the business of underwriting title insurance policies. At all relevant times, Stewart Title of Colorado, Inc. ("Stewart Colorado"), a Colorado corporation, served as Plaintiff's agent by performing title examinations, handling real estate closings, and issuing title insurance policies underwritten by Plaintiff. The Parties' dispute arises from dishonest real estate dealings that took place in Colorado. In broad strokes, Roberts-Dude, her husband Harald Dude ("Mr. Dude"), and

1

David Lester ("Mr. Lester"), their real estate agent, developed an unlawful scheme that would enable them to receive a windfall of more than $1.8 million from the sale of a property.

The facts in this appeal are undisputed. As of March 27, 2000, Mr. Dude owned, in his own name, property in Aspen, Colorado (the "Property"). On March 27, 2000, Mr. Dude conveyed the Property to Dee Investments Limited Partnership ("Dee Investments")[1] via a general warranty deed, which was recorded the following day with the Pitkin County, Colorado Clerk and Recorder (the "Clerk"). Three years later, Mr. Dude personally obtained from Wells Fargo Bank, N.A. ("Wells Fargo") a $500,000.00 home equity line of credit, to be secured by the Property. Wells Fargo then sought to obtain a title insurance policy underwritten by Plaintiff to protect Wells Fargo's proposed security interest in the Property. Subsequently, on April 30, 2003, Stewart Colorado issued a $500,000.00 title insurance policy underwritten by Plaintiff as to the Property for the benefit of Wells Fargo (the "Wells Fargo Title Commitment"). The Wells Fargo Title Commitment stated that a $200,000 deed of trust in favor of Furr and Cohen, P.A. (the "Furr and Cohen Deed of Trust") would be excepted from coverage under the title policy to be issued.

On May 29, 2003, in return for another loan obtained by Mr. Dude, Mr. Dude executed a $1,900,000.00 Adjustable Rate Note (the "WAMU Note") in favor of Washington Mutual Bank ("WAMU"). On June 4, 2003, a quitclaim deed was recorded with the Clerk which conveyed the Property from Dee Investments back to Mr. Dude. That same day, a deed of trust in favor of WAMU in the principal amount of $1,900,000.00 (the "WAMU Deed of Trust") was recorded with the Clerk against the Property, thereby securing the WAMU Note. The WAMU Deed of Trust recorded on June 4, 2003 failed to contain a legal description of the Property, thus making it a

---

[1] Originally formed by Mr. Dude, Dee Investments is Mr. and Mrs. Dude's company. Defendant was an officer of Dee Holdings, Inc., a Nevada corporation which was the general partner of Dee Investments.

defective recording.[2]  On June 9, 2003, a quitclaim deed was recorded with the Clerk which conveyed the Property from Mr. Dude yet again to Dee Investments.

Stewart Colorado uses two methods to find any loans or encumbrances that are recorded against a property during the "gap period" between issuance of title commitment and closing of a transaction: (1) an indemnity and affidavit that requires the owner of property to disclose any such loans or encumbrances to Stewart Colorado; and (2) a "date down" search of the title records conducted just before closing of the transaction, to search for any new encumbrances recorded between the date of the prior search associated with the title commitment and the closing date.  On July 2, 2003, Mr. Dude executed the Indemnity and Affidavit as to Debts, Liens, and Possession (the "Dude Affidavit") in connection with the closing on the proposed Wells Fargo home equity line of credit and associated issuance of title insurance underwritten by Plaintiff as to the Property.  The Dude Affidavit falsely stated that there were no loans, unpaid judgments, or liens on the Property in that it failed to disclose the WAMU Deed of Trust executed in the prior month.  That same day, Mr. Dude executed a $500,000.00 Home Equity Line of Credit Agreement (the "Wells Fargo Note") in favor of Wells Fargo.

On July 8, 2003, a quitclaim deed was recorded with the Clerk which again conveyed the Property from Dee Investments to Mr. Dude.  On July 8, 2003, a deed of trust (the "Wells Fargo Deed of Trust") in favor of Wells Fargo in the principal amount of $500,000.00 was recorded with the Clerk against the Property, thereby securing the Wells Fargo Note.  Immediately prior to the recording of the Wells Fargo Deed of Trust, Stewart Colorado performed three kinds of date down

---

[2] Under Colorado law, "a recorded deed of trust that completely omits a legal description is defectively recorded and cannot provide constructive notice to a subsequent purchaser of another party's security interest in the property." Sender v. Cygan (In re Rivera), __P.3d__, 2012 WL 1994873, at *1 (Colo. June 4, 2012).

searches in an attempt to find recorded liens and encumbrances on, and transfer of, the Property.[3] None of those searches revealed the defectively recorded WAMU Deed of Trust. Stewart Colorado proceeded to issue a $500,000.00 title insurance policy underwritten by Plaintiff as to the Property for the benefit of Wells Fargo (the "Wells Fargo Policy"). The Furr and Cohen Deed of Trust was excepted from coverage under the Wells Fargo Policy; the WAMU Deed of Trust was not. Later that day, a quitclaim deed was recorded with the Clerk which conveyed the Property from Mr. Dude again to Dee Investments.

Beginning in 2005, the Defendant, Mr. Dude, and Mr. Lester began planning to form a joint venture to remodel and sell the Property. In January 2006, Mr. Lester proposed forming a limited liability company, which would purchase the Property from Dee Investments for $3,800,000.00 net of closing costs. Approximately $2,500,000.00 of this $3,800,000.00 would be used to satisfy the three existing liens on the Property, including the WAMU Deed of Trust. The Defendant would acquire a 53.34 percent ownership stake in the new limited liability company in exchange for an $800,000.00 capital contribution, with Mr. Lester and his acquaintance Paul Doran acquiring the remaining membership interests after making a combined capital contribution of $700,000.00. Mr. Lester then drafted a purchase contract wherein Mr. Lester, on behalf of the new limited liability company, would purchase the Property from Dee Investments for $4,140,000.00 gross (in order to net $3,850,000.00). On February 2, 2006, the Defendant signed this purchase contract on behalf of Dee Holdings as general partner of Dee Investments.

Mr. Lester then sought to obtain a title insurance policy underwritten by Plaintiff to protect his purchase of the Property. Stewart Colorado performed an examination of the Property's title. Once again, Stewart Colorado did not discover the WAMU Deed of Trust encumbering the

---

[3] Stewart Colorado searched Colorado's public records using the legal description of the Property, the name of Dee Investments as the record owner, and the name of Wells Fargo, the lender who was to be granted a security interest in the planned transaction.

4

Property.  On February 2, 2006, Stewart Colorado issued a $4,140,000.00 title insurance policy underwritten by Plaintiff as to the Property for the benefit of Mr. Lester (the "Lester Title Commitment"). The Lester Title Commitment stated that it was conditioned upon the satisfaction of the Furr and Cohen Deed of Trust and the Wells Fargo Deed of Trust, but made no mention of the still undiscovered WAMU Deed of Trust.

When Mr. Lester received the Lester Title Commitment, he noticed that the listed encumbrances were approximately $1,800,000.00 short of the $2,500,000.00 in encumbrances on the Property that Mr. Lester had discussed with the Defendant and Mr. Dude.  Mr. Lester forwarded a copy of the Lester Title Commitment to the Defendant and Mr. Dude and subsequently engaged in a telephone conference call with the Defendant and Mr. Dude to discuss this $1,800,000.00 discrepancy. During this conference call, both the Defendant and Mr. Dude acknowledged to Mr. Lester that the Lester Title Commitment was missing an encumbrance on the Property of approximately $1,800,000.00.   On this conference call, after Mr. Lester stated that the $1,800,000.00 discrepancy could cause a serious problem with the proposed purchase of the Property, the Defendant and Mr. Dude assured Mr. Lester that they would pay off the lien represented by the WAMU Deed of Trust.

Before Mr. Lester flew to West Palm Beach to meet with the Defendant and Mr. Dude, Mr. Lester was contacted by a real estate broker who represented a client, Rosina Lee Yue ("Ms. Yue"), interested in purchasing the Property.  Mr. Lester contacted Stewart Colorado regarding title insurance on the Property, for the benefit of Ms. Yue, to be underwritten by Plaintiff.  On February 24, 2006, Stewart Colorado examined the Property's title. Once again, Stewart Colorado did not discover the WAMU Deed of Trust. That same day, Stewart Colorado issued a $4,555,000.00 title insurance policy underwritten by Plaintiff as to the Property for the benefit of Ms. Yue (the "Yue Title Commitment"). The Yue Title Commitment stated that it was conditioned upon the

5

satisfaction of the Furr and Cohen Deed of Trust and the Wells Fargo Deed of Trust, but made no mention of the still undiscovered WAMU Deed of Trust.

On February 27, 2006, without the knowledge of the Defendant or Mr. Dude, Mr. Lester and Ms. Yue executed a contract for Mr. Lester to sell the Property to Ms. Yue for $4,555,000.00.  On March 14, 2006, the Defendant executed the Indemnity and Affidavit as to Debts, Liens, and Possession (the "Defendant Affidavit") in connection with the closing on the sale of the Property from Dee Investments to Mr. Lester and associated issuance of title insurance underwritten by Plaintiff as to the Property.  Defendant's Affidavit, like the Dude Affidavit, falsely stated that there were no loans, unpaid judgments, or liens on the Property in that it failed to disclose the WAMU Deed of Trust of which she was personally aware.  On March 17, 2006, Mr. Lester executed a substantially identical affidavit (the "Lester Affidavit") in connection with the closing on the sale of the Property from Mr. Lester to Ms. Yue, stating that there were no loans, unpaid judgments, or liens on the Property.

On March 17, 2006 at 11:25 p.m., the Warranty Deed conveying the Property from Dee Investments to Mr. Lester was recorded with the Clerk.  Upon the closing of the sale of the Property from Dee Investments to Mr. Lester on March 17, 2006, Stewart Colorado wired the net sum of $3,334,308.507, after closing costs and satisfaction of the Furr and Cohen Deed of Trust and the Wells Fargo Deed of Trust, to the Defendant per the Defendant's instructions.[4]  On March 17, 2006 at 11:26 p.m., Stewart Colorado issued a $4,140,000.00 title insurance policy underwritten by the Plaintiff as to the Property for the benefit of Mr. Lester (the "Lester Policy"). The WAMU Deed of Trust was not excepted from coverage under the Lester Policy.  On March 17, 2006 at 11:28 p.m., a warranty deed conveying the property from Mr. Lester to Ms. Yue was recorded with the Clerk.

---

[4] The Defendant directly benefitted from her intentional failure to disclose the WAMU Deed of Trust to Plaintiff in that she personally received sale proceeds, in the amount of $1,839,172.728, that would have otherwise been paid in satisfaction of the WAMU Deed of Trust.

On March 17, 2006 at 11:29 p.m., a deed of trust in favor of UBS Mortgage (the "UBS Deed of Trust") in the principal amount of $3,000,000.00 was recorded with the Clerk against the Property, thereby securing a $3,000,000.00 note made by Ms. Yue to finance her purchase of the Property. The UBS Deed of Trust was assigned to Wells Fargo Bank, N.A. shortly thereafter. On March 20, 2006 at 2:45 p.m., Stewart Colorado issued a $4,555,000.00 title insurance policy underwritten by Plaintiff as to the Property for the benefit of Ms. Yue (the "Yue Policy"). Once again, the still undiscovered WAMU Deed of Trust was not excepted from coverage under the Yue Policy. Stewart Colorado relied on the representations made in the Dude Affidavit, the Defendant Affidavit, and the Lester Affidavit when it issued the Yue Policy.

On November 8, 2006, Ms. Yue sent a letter to Plaintiff informing it that WAMU was foreclosing on the WAMU Deed of Trust and asserting a claim against Plaintiff pursuant to the Yue Policy. After examining the WAMU Deed of Trust recorded with the Clerk on June 4, 2003 and seeing that it did not contain a legal description of the Property, Plaintiff concluded that it was liable to Ms. Yue under the Yue Policy and agreed to pay WAMU $1,950,000.00 to satisfy the WAMU Note.

On October 7, 2007, Plaintiff sent a letter addressed to Dee Investments, the Defendant, and Mr. Dude demanding that they pay Plaintiff, within seven days, "all amounts secured by the [WAMU Deed of Trust], as well as all costs, loss and attorney's fees that [the Plaintiff] has incurred and continues to suffer in connection with the [WAMU Deed of Trust]" pursuant to the Defendant Affidavit and the Dude Affidavit. Plaintiff did not receive any payment. On June 11, 2011, the Defendant filed a petition under Chapter 11 of the United States Bankruptcy Code in this district. The Defendant listed on her Schedule F, as contingent, unliquidated, and disputed, a $1,950,000.00 debt to Plaintiff. On October 26, 2011, Plaintiff filed unsecured Claim No. 11-1 in the amount of $1,950,000.00.

In the United States District Court for the District of Colorado, Stewart Title brought suit against Roberts-Dude and other defendants, including Mr. Dude and Dee Investments.[5] The claims against Roberts-Dude were severed from that lawsuit when she declared bankruptcy, and then litigated in an adversary proceeding within her bankruptcy in this district. Stewart Title's Complaint against Roberts-Dude in bankruptcy court contained five counts: Count I for establishment, liquidation, and allowance of a claim under § 502 based on fraud; Count II for establishment, liquidation, and allowance of a claim under § 502 based on concealment; Count III for establishment, liquidation, and allowance of a claim under § 502 based on breach of contract; Count IV for establishment, liquidation, and allowance of a claim under § 502 based on unjust enrichment; and Count V for exception from discharge under § 523(a)(2)(A).

On December 28, 2012, the bankruptcy court entered its Memorandum Opinion Underlying the Judgment (the "Order"). See Order (ECF No. 15-1, at 1–44). Therein, the bankruptcy court found that Roberts-Dude was not an honest debtor, that she knew there was a substantial deed of trust on the property that Plaintiff failed to discover, that Plaintiff issued a title insurance policy that did not except the deed of trust from coverage and was later required to pay nearly $2 million to resolve the matter, and that Defendant personally received more than $1.8 million in cash as a result of her deception. Nevertheless, the bankruptcy court determined that Plaintiff failed to prove it justifiably relied upon Roberts-Dude's misrepresentation and consequently held that Roberts-Dude's debt could be discharged, as she was not directly liable for fraud or concealment. Order, at 27, 29–30. Appellant now appeals the Order. The Parties do not dispute the factual findings of the bankruptcy court. See Br., at 9 (ECF No. 15); Answer Br., at 1, 11 (ECF No. 20). The issue

---

[5] After a jury trial conducted in June 2011, the District Court in Colorado entered judgment in favor of Stewart Title and against Mr. Dude and Dee Investments for fraud and breach of indemnity. The District Court awarded Plaintiff $1,950,000.00 in damages against Mr. Dude and Dee Investments on a joint and several basis. In addition, the District Court awarded $975,000.00 in punitive damages against Dee Investments as a result of fraud.

presented on appeal can be summarized thus: whether the bankruptcy court erred in misapplying the law of justifiable reliance to the facts of this case.

## STANDARD OF REVIEW

"The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, 'but reviews a bankruptcy court's legal conclusions *de novo*.'" In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996).   Mixed questions of law and fact are also reviewed *de novo*. In re Lentek Int'l, Inc., 346 Fed. App'x 430, 433 (11th Cir. 2009). "Under *de novo* review, [a] Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court." In re Brown, No. 6:08-cv-1517-Orl-18DAB, 2008 WL 5050081, at *2 (M.D. Fla. Nov. 19, 2008) (citing In re Piper Aircraft Corp., 244 F.3d 1289, 1295 (11th Cir. 2001)).   Where no facts are disputed and only the court's application of the justifiable reliance standard is at issue, a court should apply *de novo* review.   See In re Verola, 336 B.R. 547, 549 (S.D. Fla. 2004) ("In this case, the facts are undisputed. The issues presented in this appeal concern the proper application of legal principles to those facts. Accordingly, the proper standard of review is *de novo*."); see also Sanford Institute for Sav. v. Gallo, 156 F.3d 71, 74 (1st Cir. 1998); Sears v. United States, Case No. 12-00377-KD-B, 2012 WL 3638913, at *2 (S.D. Ala. Aug. 23, 2012) ("The Bankruptcy Court also determined that the United States justifiably relied on the misrepresentations. This finding is challenged as an incorrect application of the law concerning what constitutes justifiable reliance.").

## DISCUSSION

This Court turns to the issue of whether the bankruptcy court correctly determined that Stewart Title did not prove it justifiably relied upon any misrepresentation by Roberts-Dude and that Roberts-Dude's debt to Stewart Title could be discharged in bankruptcy.   Section 523 of the Bankruptcy Code outlines the exceptions to discharge in bankruptcy.   See generally 11 U.S.C. §

9

523.   "[C]ourts generally construe the statutory exceptions to discharge in bankruptcy liberally in favor of the debtor, and recognize that the reasons for denying a discharge . . . must be real and substantial, not merely technical and conjectural." In re Wood, 245 Fed. Appx. 916, 917–18 (11th Cir. 2007) (citing In re Miller, 39 F.3d 301, 304 (11th Cir. 1994) (internal citations and quotations omitted)).   Nevertheless, "the opportunity for a completely unencumbered new beginning" is limited to the honest debtor.  Id. (citing Grogan v. Garner, 498 U.S. 279, 286–87 (1991)).

Section 523(a)(2)(A) excludes from discharge debts obtained through "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).  "The court starts with the premise that 'the fraud exceptions to discharge exist to punish the debtor for committing fraud.'"   Sears, 2012 WL 3638913, at *3 (quoting In re St. Laurent, 991 F.2d 672, 680 (11th Cir. 1993)).   Courts interpreting § 523(a)(2)(A) require a plaintiff to prove the traditional elements of common law fraud.  In re Bilzerian, 153 F.3d 1278, 1281 (11th Cir. 1998).   Therefore, the elements of a claim under § 523(a)(2)(A) are: (1) the debtor made a false representation with the intention of deceiving the creditor; (2) the creditor relied on the false representation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result of the false representation.  In re Wood, 245 Fed. Appx. at 917–18 (citing In re Bilzerian, 153 F.3d at 1281).   In this action, the Parties dispute only one element: whether Plaintiff's reliance was justified.  Stewart Title must prove its reliance on Roberts-Dude's misrepresentation was justified in order to avoid discharge.  See Field v. Mans, 516 U.S. 59, 61 (1995); In re Bilzerian, 153 F.3d 1278; In re Johannessen, 76 F.3d 347, 350 (11th Cir. 1996). The failure to prove justifiable reliance would be fatal to Stewart Title's dischargeability case.  See In re Reynolds, 221 B.R. 828, 834 (Bankr. N.D. Ala. 1998).

In order to show justifiable reliance, Stewart Title need not prove that it acted consistent with ordinary prudence and care.  Sanford, 156 F.3d at 74.  "'The design of the law is . . . [that] 'no rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.'"

Id. (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 108, at 751 (5th ed. 1984)).  Crucially, a party may justifiably rely on a misrepresentation even when he could have ascertained its falsity by conducting an investigation.  Id.; see also Restatement (Second) of Torts §§ 540, 541 cmt. a (1977); Prosser § 108, at 753; Field, 516 U.S. at 70.

However, a party cannot justifiably rely on a misrepresentation in every single case.  To constitute justifiable reliance, "[t]he plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility."  Sears, 2012 WL 3638913, at *2 (citing In re Vann, 67 F.3d 277, 283 (11th Cir. 1995)).  As noted by the Supreme Court in Field, justifiable reliance means a person "is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation, the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation."  Field, 516 U.S. at 71 (quoting Restatement (Second) of Torts § 541 cmt. a); see also In re Bropson, 217 B.R. 650, 653–654 (Bankr. M.D. Fla. 1998).  A cursory examination or inspection is required "only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived. . . ."  Field, 516 U.S. at 71; see also In re Vann, 67 F.3d at 283.  Thus, "the matter seems to turn upon an individual standard of the plaintiff's own capacity and the knowledge which he has or which may fairly be charged against him from the facts within his observation in light of his individual case."  Field, 516 U.S. at 71.

Here, Stewart Title argues that the undisputed facts demonstrate that it justifiably relied upon Roberts-Dude's misrepresentations in the actions giving rise to this claim.  The Tenth Circuit recently addressed the issue of whether Stewart Title justifiably relied upon a defendant's misrepresentations in a related action, Stewart Title Guar. Co. v. Dude, 708 F.3d 1191 (10th Cir.

2013).[6]  In Dude, the Tenth Circuit addressed substantially the same fraud claim in the case involving Mr. Dude.  As noted *supra*, p. 7, Stewart Title brought a lawsuit against Mr. Dude, Dee Investments, Roberts-Dude, and others in Colorado.  By the time of trial, only Mr. Dude and Dee Investments were left standing; the others, including Roberts-Dude, settled or sought shelter in bankruptcy.  See Dude, 708 F.3d at 1193.  A jury found Mr. Dude and his company liable for, among other things, fraudulent misrepresentation under Colorado law.  Id.  Mr. Dude appealed, arguing that Stewart Title failed to present sufficient evidence of an essential element at trial – the justifiable reliance on defendant's misrepresentation.[7]  Id.

As noted by the Tenth Circuit, "the precise work performed by the adjectival epithet 'justifiable' when it comes to the reliance element in fraud is more than a little elusive."  Dude, 708 F.3d at 1193.  "Some understand the law as requiring the plaintiff to ferret out the facts from even the vaguest intimations or else bear the risk of loss.  Others read it as imposing no duty to investigate at all and allocating the risk of loss only to the most foolish of plaintiffs."  Id. (citing Prosser § 108, at 750).  The Tenth Circuit found it did not have to decide that debate to decide its case.  Rather, the Tenth Circuit limited its discussion to the two discrete theories of justifiable reliance propounded by Mr. Dude in the case: that Stewart Title knew Mr. Dude was a liar from the start and that Stewart Title constructively knew of his fraud.

The Tenth Circuit noted that under the first theory, the court would need to decide if there were some competent evidence in the record that Stewart Title was unaware of the falsity of Mr. Dude's representations to pass the justifiable reliance analysis.  Dude, 708 F.3d at 1195.  The Tenth Circuit found there plainly was, as Stewart Title offered testimony explaining how and why the company was left in the dark.  Id.  The Tenth Circuit then turned to Mr. Dude's second argument:

---

[6] The Tenth Circuit's decision was entered on February 26, 2013, approximately two months after the bankruptcy court entered its Order.  The bankruptcy court, however, was aware of the jury verdict in the underlying Colorado district court case.

[7] Here, as in Dude, Defendant uses this element as "the ace in the hole."  Dude, 708 F.3d at 1193.

"that Stewart Title 'constructively' knew of [Dude's] fraud because the Washington Mutual loan was publicly recorded. All Stewart Title had to do . . . [was] visit the county clerk's office to find it. The company's failure to do so . . . renders its reliance on [Dude] unjustifiable." Id. Again, the Tenth Circuit noted that it is unclear "whether a fraud plaintiff has to rifle through county records before its reliance on a defendant's misrepresentation qualifies as 'justifiable.'" Id. Nevertheless, the Tenth Circuit found that even under the more demanding of these conceptions of justifiable reliance, Mr. Dude did not have a winning argument. Id. The record shows that Stewart Title did look for recorded loans and liens on the property and failed to find the Washington Mutual loan only because the deed was defectively recorded. Id. Therefore, the Tenth Circuit affirmed the district court's decision finding that Stewart Title should win on its fraudulent misrepresentation claim. Id. at 1196.

Appellant argues that the Dude case is the most persuasive authority as to the application of Colorado state law to the fraud and concealment claims on these facts, because the same argument made here was applied to the same facts in Dude. Reply Br., at 12 (ECF No. 21) (citing Dude, 708 F.3d at 1195). While this Court agrees that Dude is persuasive, Appellee correctly notes that the Dude opinion is not binding on this Court. Appellee directs this Court to the bankruptcy court, which stated it was mindful of the district court in Colorado reaching a different conclusion. The bankruptcy court reasoned that, while the jury trial in Colorado against Dee Investments and Mr. Dude was based on substantially the same fraud claim, the present matter involved an independent presentation of evidence against a different defendant before a different trier of fact and here, plaintiff did not meet its burden of proof on the justifiable reliance component. Order, at 29, n.17. The bankruptcy court found: "In light of the Plaintiff's relevant skill, knowledge, and experience, the level of title review that would have revealed the deed of trust was the slightest inspection, a cursory glance. It is not that the Plaintiff did not look. Here the Plaintiff looked but did not see. The

13

Plaintiff cannot now complain that its injury was brought about by the Defendant's misrepresentation." Order, at 6. Appellee concludes, "the Bankruptcy Court's factual determination that Stewart did not justifiably rely upon any misrepresentation by Roberts-Dude cannot be found to be clearly erroneous." Answer Br., at 26. Appellee errs in relying upon the wrong standard. As the issue presented on appeal concerns the application of a legal principle to certain undisputed facts, the proper standard is *de novo* review. See In re Verola, 336 B.R. at 549.

As noted by the bankruptcy court, "In applying the standard of justifiable reliance, it is difficult for the Court to imagine a closer case." Order, at 45. The bankruptcy court ultimately concluded, considering Plaintiff's extensive experience, that Plaintiff's failure to uncover the WAMU Deed of Trust was much more than mere negligence and found that Plaintiff failed to establish by a preponderance of the evidence that its reliance was justified. Id. While the bankruptcy court made the undisputed factual finding that Stewart Title and its agent were sophisticated entities, Stewart Title's level of experience is not enough to prove that it unjustifiably relied upon Defendant's misrepresentations. Order, at 26. A number of courts have found justifiable reliance in cases involving sophisticated title insurers who fail to spot fraud. See, e.g., Sanford, 156 F.3d at 75 (finding that the financial institution was entitled to rely upon the defendant's representations unless there were warning signs of their falsity, even if obtaining a title search was easy and a matter of bank policy); Sears, 2012 WL 3638913 (finding that the United States' reliance on Sears' false statements concerning clear title and the lack of a mortgage or other encumbrance was justifiable even though the United States should have requested legal documentation of the pledged assets as required by the Federal Acquisition Regulations); In re Homer, 168 B.R. 790, 802 (Bankr. N.D. Ga. 1994) (finding that although the title searcher missed the Lis Pendens, nothing else in the search gave the creditor any reason to suspect that the loan application contained false information and therefore the creditor justifiably relied upon the debtor's

representations).  "In the absence of an obvious reason for investigation, the justifiable reliance standard imposes on a creditor no independent duty to investigate the veracity of the debtor's representations."  In re Chapman, Case No. 11-83991-JAC, 2012 WL 4855858 at *5 (N.D. Ala. Oct. 11, 2012).  "Contributory negligence is no bar to recovery because fraudulent misrepresentation is an intentional tort."  In re Freedman, 431 B.R. 245, 258 (Bankr. S.D. Fla. 2010) (quoting Field, 516 U.S. at 70).

Here, while it would have been better if Stewart Title's agent had correctly conducted the series of searches and inferences that would have led to the discovery of the WAMU Deed of Trust, the agent's failure to do so does not excuse Roberts-Dude's fraud.  This Court finds that record demonstrates that more than a cursory glance would be needed to determine whether Stewart Title was being deceived.  Stewart Title would have needed to take several steps and make various logical deductions to realize that Defendant may have lied in her Affidavit.  Defendant's Affidavit, which is used by the title insurer to discover any liens or loans not shown on the Commitment following the title examination, stated on its face that the title company will rely upon the Affidavit when issuing title insurance.  Reply Br., at 19.  Affidavits filed by Defendant, Mr. Dude, and Mr. Lester each unlawfully failed to disclose the WAMU Deed of Trust.  Thus, Stewart Title justifiably relied upon the Affidavit of Roberts-Dude.  See Sears, 2012 WL 3638913, at *2 (affirming the bankruptcy court's finding that "the contracting officers were subjectively justified in relying on [the debtor's] affidavits, considering the normal course that is followed . . . Corporate sureties are accepted without the additional documentation because they are pre-approved. Moreover, there was nothing obviously false or contradictory in [the debtor's] affidavits, which would have prompted further investigation." );  First Am. Title Ins. Co. v. Lett, 238 B.R. 167, 186 (Bankr. W.D. Mo. 1999) (title company relies on both title search and affidavits).  Thus, the bankruptcy court's determination that Stewart Title should have undertaken an investigation to uncover whether

Roberts-Dude's representations in her Affidavit were false was incorrect, as that investigation would exceed the demands of justifiable reliance. See Fields, 516 U.S. at 77.

The factual findings in this case establish that Stewart Title would have needed to take numerous steps to uncover the lien purposefully hidden by Roberts-Dude, her husband, and others. The record shows that it was Stewart Title's practice not to record an instrument and not to issue a pending title insurance policy related thereto, without further review and/or modification, when a previously unknown lien or encumbrance is discovered during a date down search. Order, at 28. It is undisputed that Plaintiff, through its agent, performed three date down searches on July 8, 2003 in order to find any previously unknown lien or encumbrances and failed to find the defectively recorded WAMU Deed of Trust. Id. The three searches were as follows: (a) a search using the legal description of the Property; (b) a grantor search using the name of the record owner listed on the Title Commitment, Dee Investments; and (c) a search using the name of the proposed security interest grantee, Wells Fargo. Order, at 10. The WAMU Deed of Trust was never disclosed, because it was improperly recorded without a legal description of the Property and because Mr. Dude, not the owner named on the title commitment, Dee Investments, was the grantor of the WAMU Deed of Trust. Id. Stewart Title's agent would have had to conduct a search under Mr. Dude's name to find the WAMU Deed of Trust. The bankruptcy court's factual findings show that Stewart Title's agent could have followed certain logical steps and made a series of inferences to find the undisclosed and defectively recorded WAMU Deed of Trust. "If the Plaintiff properly followed the title trail, it would have led the Plaintiff to discover the truth – that the Defendant was lying and the WAMU Deed of Trust encumbered the Property." Id. However, "Monday morning quarterbacking by this court is not allowed." Sears, 2012 WL 3638913, at *2. As Appellant argues, "the law did not require this investigation because [Stewart Title's agent] was not alerted to facts

16

that let him know that [Stewart Title] was being deceived, and he may not have caught the fraud even if he had made the investigation." Br., at 23.  This Court agrees.

As Sir Walter Scott wrote, "What a tangled web we weave when first we practice to deceive."  Walter Scott, Marmion: A Tale of Flodden Field, p. 165 (Leach, Shewell, & Sanborn 1891) (1808).  Stewart Title should not be required to untangle the web of deception to uncover fraud when it was apparent on the face of the transaction that it was business as usual.  See Sanford, 156 F.3d at 75 ("In the absence of any warning signs (*i.e.*, obvious or known falsities, see Restatement § 541) either in the documents, in the nature of the transaction, or in [the debtor's] conduct or statements, the Bank justifiably relied on his representation.").  Therefore, the undisputed facts on the record demonstrate that Stewart Title satisfied the justifiable reliance element of a claim under Section 523(a)(2)(A).[8]  Denise Roberts-Dude is not the "honest but unfortunate" debtor entitled to the fresh start that a discharge in bankruptcy provides.  See Grogan v. Garner, 498 U.S. 279, 286–87 (1991) ("[T]he [Bankruptcy Code] limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor by exempting certain debts from discharge. . . .").  Rather, she is the dishonest debtor that the Bankruptcy Code will not protect.

## CONCLUSION

Accordingly, for the foregoing reasons, the bankruptcy court's December 28, 2012 Order Granting Final Judgment for Defendant is REVERSED AND REMANDED for an entry of a Judgment not inconsistent with this Order.

---

[8] The Parties did not dispute that the other elements of fraudulent misrepresentation were satisfied. As noted by the bankruptcy court, "There is no doubt that the Defendant intended to and did in fact deceive the Plaintiff, achieving a sizeable monetary benefit for herself and causing significant harm to the Plaintiff." Order, at 45.

17

It is further ORDERED AND ADJUDGED that the Clerk of Court shall CLOSE this case.

All pending motions not otherwise ruled upon are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ day of July, 2013.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:     All counsel of record